No. 2-24-0709
Opinion filed February 27, 2025

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 24-CF-2187 |
| ZAVION A. LOPEZ, | ) ) ) ) | Honorable Eun K. Yoon and David P. Kliment, |
| Defendant-Appellee. | ) | Judges, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     The State appeals from the trial court's order denying its petition for pretrial detention and granting the release of defendant, Zavion A. Lopez, pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes informally called the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of Public Act 101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On October 5, 2024, the State charged defendant with one count of possession of a firearm without a firearm owner's identification (FOID) card (430 ILCS 65/2(a)(1) (West 2022)) (Class 3 felony) as he was ineligible due to his age; four counts of aggravated unlawful use of weapon (720 ILCS 5/24-1.6(a)(2) (West 2022)) (Class 4 felony); and one count of resisting or obstructing a police officer (520 ILCS 5/1.22 (West 2022))[1]. (Class A misdemeanor). The State also filed a petition for pretrial detention. See 725 ILCS 5/110-6.1 (West 2022). The State alleged that there was probable cause to show that defendant committed the alleged offenses and that his pretrial release posed a real and present threat to the safety of any person or persons or the community.

¶ 4    A hearing was held on the State's petition the next day. The State tendered the police synopsis, which stated as follows. On October 4, 2024, the reporting officer (who wrote the synopsis and filed the report), along with other officers, conducted a walk through at a West Aurora High School football game. School staff members informed them that two young men, who were among a group of five individuals near the entry to the game, were banned from attending. Thereafter, the officers observed the five individuals improperly walking in the roadway, crossing a street without using a crosswalk, and eventually approaching a nearby intersection. At 10:18 p.m., at that same intersection, the officers exited their semi-marked squad cars and the five individuals began to run away. All four of the officers gave chase and commanded the individuals to stop running. The reporting officer ultimately caught defendant and observed defendant holding

---

[1]This citation to the resisting-a-peace-officer provision of the Wildlife Code appears to be a scrivener's error, as the officers involved in defendant's apprehension were from the Aurora police department, not the Department of Natural Resources. The intended citation was likely section 31-1 of the Criminal Code of 2012 (720 ILCS 5/31-1 (West 2022).

his waistband. When the officer assisted defendant to the ground and told him to put his hands behind his back, defendant refused and tried to get up. The officer assisted defendant to the ground again and placed him in handcuffs with both hands behind his back. The officer found a loaded .40-caliber Smith and Wesson handgun in defendant's waistband. An investigation showed that the firearm was stolen. Two of the other five individuals, who also had firearms located on or near them, were also arrested and are codefendants.

¶ 5    The State also tendered a public safety assessment report, which gave defendant a score of two out of six on a new-criminal-activity scale. The report also indicated that, at the time of the offense, defendant was 18 years old, did not have any prior convictions or any other pending charges, and did not have an active FOID card. The report recommended that, if released, pretrial supervision or other conditions need not be imposed.

¶ 6    The State argued that, at the time of the offense, all five individuals were wearing black clothing and black face masks. Defendant, due to his age, was not allowed to legally possess a handgun. The State noted that defendant did not have a job or a high school degree. The State argued that defendant posed a threat to the community because he was wearing black clothing and a face mask and carrying a handgun in the vicinity of a large group of people. The State also argued that because defendant was only 18, he was more likely than someone who was older to fire a gun when confronted, scared, or for other unnecessary reasons. The State asserted that the threat posed by defendant could not be mitigated by electronic home monitoring (EHM) because he would be living in the same home environment where he was able to illegally possess a gun. Additionally, home confinement could not mitigate the threat because defendant would still be allowed to leave his house two days a week (see 730 ILCS 5/5-8A-4(A-1) (West 2022) (a defendant on EHM must be allowed no fewer than two days per week outside the home to participate in basic activities)).

¶ 7      Defense counsel stated that defendant was 18 years old, a high school graduate (contrary to the State's representation), not a member of a gang, and had no gang contacts. Defendant had never been arrested and did not have a juvenile or adult criminal history. If released, defendant would reside with his mother in Aurora. Counsel further stated that there was no evidence that defendant personally stole the firearm he possessed. Defendant worked part-time at a fast-food restaurant in Batavia and thus had significant ties to the community. Counsel argued that defendant was not a threat to the community because he did not use the handgun or threaten to use it. Any threat defendant posed could be mitigated by EHM, where defendant would be allowed to leave his house only for work, court, and medical emergencies. Counsel stated that, if released, defendant would agree to not possess any firearms, maximum pretrial conditions, and to not contact any of the codefendants.

¶ 8      The trial court (Judge Eun K. Yoon) found that there was clear and convincing evidence that defendant committed the alleged offenses and that he was a threat to the community but determined that conditions of release could mitigate the threat. The trial court stated that it considered that defendant was near a crowded stadium with a loaded handgun, he ran from the police, and, when arrested, he refused to put his hands behind his back. The trial court also considered that defendant was only 18 and had no criminal history, no violent crimes or gang association, and no other incidents involving possession of a firearm. The trial court denied the State's petition and placed defendant on maximum conditions of pretrial release, which included that defendant was not allowed to go within 500 feet of West Aurora High School and, while on EHM, he could leave home only for work, court, or medical emergencies. Further, he was prohibited from contacting the codefendants, was not allowed to possess a firearm or ammunition, had to obey all court orders, and could not commit any new criminal offenses.

¶ 9    On October 21, 2024, the State filed a motion for relief, arguing that the trial court erred in finding that conditions of release could mitigate the threat posed by defendant. The State argued that the trial court failed to consider that defendant was dressed in all black and had a face mask, three of the five individuals carried loaded firearms, and the firearm defendant possessed was stolen. The State noted that defendant disobeyed police commands to stop running, which showed that he could not obey court orders or conditions of release. Further, defendant could not abide by a condition to not possess any firearms as demonstrated by the fact that he was legally prohibited from possessing a firearm but was still found carrying a loaded firearm. EHM could not control whom defendant was with or what he possessed in his home, and it also allowed for two days of movement within the community. The State argued that defendant's lack of criminal history was just one of many factors to consider and that the present charges provided greater evidence of defendant's threat to the community if released.

¶ 10    On October 24, 2024, the trial court (Judge David Kliment) held a hearing on the State's motion for relief. The State originally rested on its written motion in arguing that defendant's pretrial release was against the manifest weight of the evidence. Defense counsel offered a proffer that, if called, defendant would testify that he has an interview with the United States Postal Service for a third-shift job, which would be in addition to his current part-time job at a fast-food restaurant. Counsel argued that conditions of release could mitigate any threat defendant posed. Counsel asserted that defendant was unlikely to possess another firearm now that he understood the consequences. While EHM would allow defendant two days of movement per week, counsel argued that it would still mitigate the threat posed by defendant, as mitigation did not require complete isolation from the community. Counsel acknowledged the State's argument that defendant was going back to the same home environment where he was previously allowed to

possess a firearm. However, counsel argued that there was no evidence to show how the firearm came into defendant's possession, nor that anyone in defendant's home environment was aware of it. Furthermore, counsel asserted that defendant's running from the police did not prove that he would not obey court orders.

¶ 11    The State argued that the trial court erred in finding that conditions of release could mitigate the threat posed by defendant. The State contended that fear of further charges would not prevent defendant from possessing another weapon, as he already knew that he was not allowed to possess a firearm the first time. The State also argued that EHM placed defendant back in the community without adequate monitoring, as an ankle bracelet could not alert authorities if defendant was in possession of a weapon. Additionally, defendant was returning to a home environment where he was previously allowed to possess a weapon, and there was no indication that the supervision in his home environment would protect the community from a second offense. While a condition requiring defendant to remain at least 500 feet from the high school might prevent an incident at the school, it would not protect the community at large.

¶ 12    In ruling on the State's motion for relief, the trial court stated that it read the transcript from the original detention hearing and noted that the only issue before it was whether conditions of release could mitigate the threat posed by defendant. The trial court commented that defendant was 18, a high school graduate, not a member of a gang, had no gang contacts, had never been arrested before, and had no criminal history. The trial court found that the decision to release defendant with conditions was not against the manifest weight of the evidence or an abuse of discretion. The State appealed from this order.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, the State argues that the trial court abused its discretion in finding that less restrictive conditions, other than detention, would be sufficient to protect the community from defendant.

¶ 15    In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). Pretrial release is governed by article 110 of the Code as amended by the Act. 725 ILCS 5/art. 110 (West 2022). Under the Code, as amended by the Act, a defendant's pretrial release may be denied only in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 16    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 17    If the trial court finds that the State proved a valid threat to anyone's safety or the community's safety, it must then determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community." 725 ILCS 5/110-5(a) (West 2022). In making this determination, the trial court should consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the

nature and seriousness of the specific, real, and present threat to any person that the defendant's release would pose. *Id.* No single factor is dispositive. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 12. Section 110-6.1 explicitly requires courts to presume that all defendants are eligible for pretrial release (725 ILCS 5/110-6.1(e) (West 2022)), and pretrial detention can be ordered only when the State proves that no condition or set of conditions can mitigate—not absolutely eliminate—the real and present threat a defendant poses (*id.* § 110-6.1(e)(3)).

¶ 18    Under the recent supreme court decision in *People v. Morgan*, 2025 IL 130626, ¶ 54, when, as in this case, the parties to a pretrial detention hearing proceed solely on the basis of documentary evidence, and no live testimony is presented, "the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature." Under *de novo* review, "we perform the same analysis that the trial [court] would perform using the proper standards." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 19    In the present case, the trial court found that there was clear and convincing evidence that defendant committed the alleged offenses and that defendant posed a threat to the community. On appeal, the State challenges the trial court's finding that conditions of release could mitigate the threat posed by defendant. In arguing that defendant's threat to the community cannot be mitigated by conditions of release, the State relies on the general circumstances surrounding the charges— that defendant had a loaded firearm in the vicinity of a crowded football game. However, it is well settled that it is inappropriate to detain a defendant based on the bare allegations of the charge. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18. Moreover, the nature and the circumstances of the charged offenses is just one factor to consider in determining whether the threat posed can be mitigated by conditions of release. *Trottier*, 2023 IL App (2d) 230317, ¶ 12.

¶ 20    After considering all the relevant factors, we agree with the trial court and hold that the State failed to provide clear and convincing evidence that conditions of release cannot mitigate the threat posed by defendant. We acknowledge that defendant was in the vicinity of a high school football game with a loaded weapon and that such behavior clearly presents a danger to the community. Nonetheless, our legislature has mandated that all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). As such, "even those accused of violent offenses are presumed eligible for pretrial release, and it is the State who must justify their pretrial detention." *Stock*, 2023 IL App (1st) 231753, ¶ 18. In this case, defendant was an 18-year-old high school graduate with no criminal history, living at home with his family, and not a member of a gang. He worked part-time and was applying for a second job with the post office. There was no evidence that defendant had ever used a firearm or had a history of violent behavior. A public safety assessment report ranked him low on a new criminal activity scale and recommended that, if released, no conditions were necessary. While the State argued below that defendant was not a high school graduate and was unemployed, it does not dispute on appeal that defendant is now an employed high school graduate. As such, consideration of the relevant factors weighs in favor of a determination that conditions of pretrial release can mitigate any threat posed by defendant.

¶ 21    The State argues that conditions of release will not prevent defendant from obtaining a weapon because he was already prohibited by law from having a firearm but he possessed one anyway. However,

> "[s]weeping generalizations, such as 'defendants don't follow orders' (*People v. Jones*, 2024 IL App (2d) 230534-U, ¶ 23) or that conditions of release are loosely monitored ([*People v.*] *Atterberry*, 2023 IL App (4th) 231028, ¶ 18), do not satisfy the statutory

requirements that the State prove that no set of conditions can mitigate a defendant's real and present threat." *People v. Martinez-Ortiz*, 2024 IL App (2d) 240102-U, ¶ 31.[2] Here, defendant agreed to, and the trial court imposed, maximum conditions of release. While such conditions cannot completely eliminate any threat posed by defendant, they can mitigate it. For example, the imposed conditions limit his access to the community, restrict his attendance at future high school gatherings, and prohibit his communication with his codefendants. Accordingly, under the circumstances in this case, we conclude that the State failed to prove that conditions of release cannot mitigate the threat posed by defendant.

¶ 22                                      III. CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 24    Affirmed.

---

[2]Even though this decision was unpublished, we may still consider it as persuasive authority. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) ("a nonprecedential order entered under subpart (b) of this rule on or after January 1, 2021, may be cited for persuasive purposes"); *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 21 n.1 (considering unpublished orders entered before January 1, 2021, as persuasive authority).

---

*People v. Lopez*, **2025 IL App (2d) 240709**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 24-CF-2187; the Hon. Eun K. Yoon and the Hon. David P. Kliment, Judges, presiding. |
| **Attorneys for Appellant:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Carolyn R. Klarquist, and Manuela Hernandez, of State Appellate Defender's Office, of Chicago, for appellee. |