NOTICE

Decision filed 12/23/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250757-U

NO. 5-25-0757

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 25-CF-322 |
| | ) | |
| WILLIAM AYRES, | ) | Honorable |
| | ) | Brett N. Olmstead, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices McHaney and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's orders granting the State's verified petition to deny pretrial release and denying defendant's motion for relief where the record contains clear and convincing evidence that no condition or combination of conditions of release would be adequate to mitigate the real and present threat defendant posed to the community.

¶ 2    Defendant, William Ayres, appeals orders of the circuit court of Champaign County granting the State's verified petition to deny pretrial release and denying his subsequent motion for relief. Defendant argues that the State failed to prove by clear and convincing evidence that no condition or combination of conditions of pretrial release would mitigate any real and present threat to the community. We affirm the circuit court's orders.

1

¶ 3                                    I. BACKGROUND

¶ 4      On March 18, 2025, the State filed an information charging defendant with one count each

of home invasion (720 ILCS 5/19-6(a)(2) (West 2022)), domestic battery with a prior domestic

battery conviction (*id.* § 12-3.2(a)(2)), and criminal trespass to residence (*id.* § 19-4(a)(2)). The

State alleged that on March 16, 2025, defendant knowingly and without authority entered the

apartment of Jasmine Taylor-Gwin, a household or family member, knowing that one or more

individuals were present; that defendant pulled Taylor-Gwin's hair; and that he caused her injury

by grabbing her on or about the neck.

¶ 5      On March 19, 2025, the State filed a verified petition to deny pretrial release. The State

asserted that (1) the proof was evident and the presumption great that defendant committed a

detainable offense and (2) defendant posed a real and present threat to the safety of any person or

persons or the community. The same day, a warrant was issued for defendant's arrest.

¶ 6      On May 20, 2025, a pretrial investigation report (PTI) was filed with the court. The report

included the following information provided by defendant: he was a lifelong resident of

Champaign County whose entire family lived in the area; he had two children with a third on the

way; he was unemployed and looking for work; and he had no history of drug abuse or mental

health issues. The report indicated that this information could not be verified.

¶ 7      The PTI revealed that defendant scored 9 out of 14 on the Virginia Pretrial Risk Assessment

Instrument—Revised (VPRAI-R). This placed him in level five of six for risk of violating the

terms of pretrial release.

¶ 8      The PTI also included a list of defendant's pending charges and prior convictions. In

addition to the charges in this case, defendant faced a charge of armed habitual criminal (720 ILCS

5/24-1.7(a) (West 2022))[1] in Champaign County case No. 23-CF-1409.[2] His criminal history included a 2021 conviction for unlawful possession of a firearm by a felon (720 ILCS 5/24-1.1(a) (West 2016)), a 2014 conviction for aggravated robbery with a firearm (720 ILCS 5/18-1(b)(1) (West 2014)), a 2012 conviction for unlawful possession of a firearm by a felon (720 ILCS 5/24-1(a) (West 2012)), and 2011 convictions for obstruction of justice (720 ILCS 5/31-4(a) (West 2010)) and domestic battery/bodily harm (*id.* § 12-3.2(a)(1)).

¶ 9    On May 20, 2025, the circuit court held a hearing on the State's petition to deny pretrial release. At the same hearing, the court considered the State's verified petition to deny pretrial release in a newly filed case No. 25-CF-594, and a motion to revoke pretrial release in case No. 23-CF-1409. The court indicated at the outset that it was taking judicial notice of the PTI, the charges pending in all three cases, and all court orders and docket entries in all three cases. The court noted, however, that it did not consider the pending charges "as in any way self-proving."

¶ 10    The court next asked the State to present the factual bases underlying the charges in all three cases. Although the prosecutor referred to the police reports, those reports were not entered into evidence and do not appear in the record before us. The prosecutor first described the November 8, 2023, incident at issue in case No. 23-CF-1409. He told the court that when police conducted a raid pursuant to a parole arrest warrant for defendant, they found a firearm on top of a pile of laundry and eventually found defendant hiding in the basement. Before transport, defendant asked for his cell phone, which was found near the gun.

---

[1]Pursuant to a recent statutory amendment, the offense of armed habitual criminal is now known as unlawful possession of a weapon by a repeat felony offender. See Pub. Act 103-822, § 20 (eff. January 1, 2025) (amending 720 ILCS 5/24-1.7).

[2]Defendant was also facing charges of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2024)) and obstructing a peace officer (*id.* § 31-1(a)(2)) in Champaign County case No. 25-CF-594, filed the previous day; however, those charges are not reflected in the PTI.

¶ 11    The prosecutor next discussed the factual basis underlying that the charges pending in this case. He noted that defendant previously resided in Taylor-Gwin's home, but he moved out before the incident occurred. The prosecutor indicated that, according to police reports, Taylor-Gwin told police defendant called her on the evening of March 16, 2025, asking to retrieve some of his belongings from her apartment. She told him she was not home and that she would call him when she got home. Approximately an hour later, while Taylor-Gwin was taking out the trash, defendant approached her and accused her of "playing games." When she went into her apartment and attempted to close the door behind her, defendant forced his way inside. Taylor-Gwin told police that she tried to reach her phone, but defendant grabbed her by her hair and pulled her backwards. She managed to get loose and retrieve her phone, but defendant took it from her so she could not call police. At one point, defendant grabbed Taylor-Gwin by the neck. Eventually, she managed to escape and called the police. Taylor-Gwin told police that she was not injured, but her face hurt. Police responding to her call observed a scratch on her neck, defendant's jacket in her kitchen, and damage to the window trim on the front door where defendant forced his way in.

¶ 12    Lastly, the prosecutor provided the factual basis underlying the charges at issue in case No. 25-CF-594, which stemmed from a May 16, 2025, incident. The prosecutor told the court that, according to the police report, officers executing an arrest warrant for defendant had to force entry because no one answered the door. They searched the residence and found defendant hiding in an upstairs bedroom closet, brandishing a firearm. The officers fired a "less-than-lethal round" at defendant, then left the bedroom and began negotiations with defendant. This led to a one-and-a-half-hour standoff, during which defendant stood at the top of the staircase, armed, threatening to kill himself and asking to see his family. The police report indicated that police recovered a black Ruger LPC pistol when they searched the house.

¶ 13    In response, defense counsel highlighted information from police reports related to the charges in the instant case and in case No. 25-CF-594. With respect to the incident at issue in this case, she noted that defendant's sister, Unique Ayres, was at Taylor-Gwin's home on March 16, 2025, and she "tells a very different story of what happened." Regarding the incident at issue in case No. 25-CF-594, counsel noted that the firearm was recovered during a search pursuant to a warrant issued after defendant's arrest. In addition, she emphasized that although defendant admitted to hiding in the closet, he denied being armed at the time.

¶ 14    In its argument, the State noted that defendant had two convictions for unlawful possession of a weapon by a felon prior to the charges at issue in case No. 23-CF-1409 and emphasized that the conditions of pretrial release imposed on defendant in that case "did not work." The State argued that evidence of the battery against Jasmine Taylor-Gwin in this case and defendant's possession of a gun in case No. 25-CF-594 demonstrated his dangerousness. Finally, the State asserted that no conditions of release would reasonably protect the community from defendant.

¶ 15    Defendant noted that he was on pretrial release with conditions in case No. 23-CF 1409 for 18 months before having any contact with police. He argued that this "cuts against the idea that no conditions would be effective."

¶ 16    In ruling from the bench, the court first determined that the proof was evident and the presumption great that defendant committed a detainable offense in this case, specifically, domestic battery with a prior domestic battery conviction. The court noted that Taylor-Gwin's demeanor was consistent with having experienced a traumatic event and that the scratch on her neck was likewise consistent with the account of the incident she gave police.

¶ 17    The court next addressed the questions of whether defendant posed a real and present threat to the safety of any person or persons or to the community and whether any conditions of release

5

could mitigate that threat. The court noted that if the only issue were a real and present threat to Taylor-Gwin's safety, there were conditions of release available that could realistically protect her. However, the court opined that it could not realistically stop defendant from getting a gun, as proven by his repeated charges for unlawful possession of a weapon by a felon. The court found that defendant's access to guns constituted a real and present threat to the safety of the community. Further, because no conditions imposed would prevent him from getting a gun, no conditions were available to mitigate the threat.

¶ 18    On the same date, the court entered an order for pretrial detention containing additional factual findings. In its summary of findings supporting its conclusion that the proof was evident and the presumption great that defendant committed a detainable offense, the court stated that when responding officers found Taylor-Gwin in her apartment, they observed that she was "visibly upset" and had a scratch on her neck consistent with her account of events. In the summary of findings supporting its conclusions that defendant posed a real and present threat to community safety and that no conditions of release would mitigate that threat, the court stated that (1) police found defendant with a gun on May 16, 2025; (2) defendant was on pretrial release in case No. 23-CF-1409 when both the incident at issue in this case and the incident at issue in case No. 25-CF-594 occurred; and (3) defendant's score of nine on the VPRAI-R placed him in a high-risk category. The court concluded its summary by stating that despite defendant's "lifelong community ties," he demonstrated "that no prison sentence, court order, or even parole term—with the threat of summary return to prison—can deter him from getting a gun." The court thus concluded that the State met its burden of proof by clear and convincing evidence.

¶ 19    On June 5, 2025, a superseding indictment was filed on all three counts. Its allegations were identical to those in the original information.

6

¶ 20    On September 11, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). He argued only that the State failed to prove by clear and convincing evidence that no condition or combination of conditions would mitigate the real and present threat to the safety of the community. This was so, he contended, "because he can be safely monitored by the Office of Statewide Pretrial Services on electronic home detention."

¶ 21    The matter came for a hearing the same day, at which the court also considered similar motions for relief filed in case Nos. 23-CF-1409 and 25-CF-594. The court began by taking judicial notice of the orders and docket entries in all three cases and the proceedings in the May 20 hearing. The court also noted that it was considering the PTI previously filed.

¶ 22    Defendant first argued that the court's detention orders were incorrect when entered because the court erred in finding that there were no conditions it could impose to mitigate the real and present threat posed by defendant. He asserted that the court should have considered conditions such as electronic home monitoring.

¶ 23    The State, by contrast, argued that it was unrealistic to expect that defendant would comply with conditions of release, even with monitoring by a GPS device. The State emphasized that "a GPS device is a reactive measure" that could provide a record of violations when they occur, it would do nothing to prevent violations.

¶ 24    Ruling from the bench, the court first considered whether the orders at issue were correct when entered. With respect to the detention orders entered in this case and in case No. 25-CF-594, the court framed the question before it as whether there were available options to mitigate the threat that the court failed to consider. In answering that question, the court stated that it did not have discretion to order home detention or GPS monitoring to mitigate a threat to the safety of the community at large. See 725 ILCS 5/110-5(g) (West 2024) (providing that electronic monitoring,

7

GPS monitoring, and home detention may only be imposed as conditions if no less restrictive conditions "would reasonably ensure the appearance of the defendant for later hearings or protect an identifiable person or persons from imminent threat of serious physical harm."). Moreover, the court stated that even if available, such conditions would not be adequate to mitigate the threat for the reasons set forth in its earlier order. The court did not reiterate all its previous findings, but it did emphasize that police found defendant with a pistol when "there were already legal requirements in place" preventing him from possessing a gun. The court noted that a different standard applied to the order revoking defendant's pretrial release in case No. 23-CF-1409. After stating that the parties' arguments did not address that standard, the court found any such arguments forfeited.

¶ 25 The court turned its attention to whether continued detention was necessary. See *id.* §§ 110-6(j), 110-6.1(i-5). Defense counsel informed the court that defendant was involved in juvenile court proceedings concerning his youngest child, who was born in January 2025. Counsel noted that to prevent the termination of his parental rights in those proceedings, defendant was required to complete classes available in the community. Counsel also offered into evidence an email from defendant's fiancée, Alize Markham.

¶ 26 A printout of Markham's email was entered into evidence as Defendant's Exhibit 1. In it, Markham indicated that she had known defendant for three years and found him to be "caring, dependable, and hardworking." She opined that the pending charges did not reflect the person she knew. Markham described defendant as a "devoted father who is motivated to rebuild his life for the sake of the children." She stated, "He deeply regrets his involvement in this matter and is committed to learning from his mistakes."

8

¶ 27　Defendant argued that conditions were available to the court to mitigate any safety threats, although he did not elaborate. He further argued that his pending juvenile court case provided him with an added incentive to comply with any conditions the court imposed. The State argued that defendant had "a long history of violating court orders whether it be parole or mandatory supervised release [or] pretrial release." As such, the State contended, the added incentive of a pending juvenile court case would not do much to mitigate the threat.

¶ 28　In ruling, the court first explained that the issue before it in this case and in case No. 25-CF-594 was whether continued detention was necessary to mitigate the real and present threat to the community, while the question in case No. 23-CF-1409 was whether continued detention was necessary to prevent defendant from committing additional Class A misdemeanors or felonies. The court noted that, as a practical matter, there was "a lot of overlap between these two standards," because if defendant were charged with any new offenses, they would "involve most likely something dangerous."

¶ 29　The court rejected defendant's contention that the added incentive for compliance provided by his pending juvenile court case would make a difference. The court noted that the offenses at issue in this case and case No. 25-CF-594 were committed after the child was born, at which time defendant was aware of his parental responsibility. The court emphasized that defendant was already on pretrial release when he committed these offenses. The court stated, "I fail to see how the added incentive can—tips the scale here given all of the incentive he had before and in the past when he's chosen to commit gun crimes."

¶ 30　Addressing Markham's email, the court acknowledged that Markham knew defendant well and that she saw "a really good side of this man." The court noted, however, that at the same time, defendant committed the offenses at issue in all three cases. The court stated, "The problem is the

9

Court has struggled to find any set of conditions that can ever be successful in keeping a gun out of his hand."

¶ 31 The court entered a continued detention order on the same date, September 11, 2025. The court expressly found that continued detention was necessary to avoid a real and present threat. In summarizing its findings, the court again stated that defendant "has shown a complete unwillingness to abide by parole, pretrial release conditions, and sentencing orders." The court further noted that neither Markham's letter in support of defendant nor the added incentive for compliance resulting from the pending juvenile court case were enough to demonstrate that detention was no longer necessary. The court reiterated that the conduct at issue in this case occurred during the time Markham knew defendant, and some of the relevant conduct occurred after defendant's youngest child was born.

¶ 32 On September 18, 2025, the defendant filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 604(h)(1)(iii) (eff. Apr. 15, 2024).

¶ 33                                    II. ANALYSIS

¶ 34 On appeal, defendant filed a notice in lieu of a memorandum. As such, his motion for relief serves as his argument on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). As discussed previously, defendant's only argument in that motion was that the State failed to provide clear and convincing evidence that no condition or combination of conditions of release could mitigate the real and present threat the court found he posed. We reject this contention.

¶ 35 All criminal defendants are presumptively eligible for pretrial release, even those charged with violent offenses. *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 20; see 725 ILCS 5/110-2(a) (West 2024). Pretrial release may only be denied "in certain statutorily limited situations." *Lopez*, 2025 IL App (2d) 240709, ¶ 15 (citing 725 ILCS 5/110-6.1(e) (West 2022)). Pertinent here, the

10

circuit court may deny pretrial release after a hearing on the State's verified petition where (1) the proof is evident or the presumption great that the defendant has committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person or persons or to the community, and (3) no condition or combination of conditions would mitigate the threat. *People v. Miller*, 2024 IL App (1st) 240588, ¶ 24 (citing 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022)).

¶ 36    The State bears the burden of proving each of these three requirements by clear and convincing evidence. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 16. If the State fails to prove any one of these requirements, "the presumption of release remains, and detention is unlawful." *People v. Sorrentino*, 2024 IL App (1st) 232363, ¶ 32. In addition, the circuit court must make written findings summarizing its reasons for denying pretrial release. *Horne*, 2023 IL App (2d) 230382, ¶ 18 (citing 725 ILCS 5/110-6.1(h)(1) (West 2022)).

¶ 37    Our standard of review on appeal depends on the nature of the evidence presented at the pretrial detention hearing. Where the parties present the testimony of live witnesses, we review the circuit court's decision to determine whether it is against the manifest weight of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, where the parties proceed by proffer, as they did in this case, the appellate court "stands in the same position as the circuit court and may therefore conduct its own independent review of the proffered evidence and evidence otherwise documentary in nature." *Id.* ¶ 51. Our review is thus *de novo*. *Id.* ¶ 54. This means we will conduct the same analysis the circuit court would conduct, and we are not bound by its findings. *Lopez*, 2025 IL App (2d) 240709, ¶ 18.

¶ 38    Here, defendant does not challenge the court's findings concerning the first two requirements; he challenges only its finding that no conditions of release could mitigate the threat.

11

He contends that the court erred in finding that the State satisfied its burden of proving this proposition by clear and convincing evidence. We disagree.

¶ 39     Once the circuit court determines that a defendant poses a threat to the safety of any individual or the community, the court must consider whether any conditions of pretrial release can mitigate the threat and whether defendant is likely to comply with such conditions. *Horne*, 2023 IL App (2d) 230382, ¶ 32 (citing 725 ILCS 5/110-5(a)(1)-(6) (West 2022)). Pertinent factors include (1) the nature and circumstances of the offenses charged (725 ILCS 5/110-5(a)(1) (West 2024)); (2) the weight of the evidence against defendant (*id.* § 110-5(a)(2)); (3) defendant's character, family ties, employment, community ties, length of residence in the community, and criminal history (*id.* § 110-5(a)(3)(A)); (4) whether defendant was on probation or parole when arrested on the underlying charges (*id.* § 110-5(a)(3)(B)); and (5) the nature and seriousness of the threat posed by defendant's release based on the specific and articulable facts of the case (*id.* § 110-5(a)(4)). In cases involving domestic battery, the court may consider additional factors, such as (1) whether defendant has a history of domestic violence (*id.* § 110-5(a)(6)(B)); (2) whether defendant has a history of violating court orders (*id.* § 110-5(a)(6)(D)); and (3) whether defendant has access to deadly weapons or a history of using deadly weapons (*id.* § 110-5(a)(F)). In addition to these factors, the court may consider a risk assessment tool. *Id.* § 110-5(b).

¶ 40     Here, the circuit court carefully considered and expressly addressed these factors. The record in the instant case demonstrates that the offenses at issue involved injury to Jasmine Taylor-Gwin; defendant has a substantial criminal history, including multiple convictions for illegally possessing a firearm, a prior conviction for a robbery involving the use of a firearm, and a prior conviction for domestic battery; defendant was on pretrial release when he committed the offenses at issue in this and one other case; and defendant's score on the VPRAI-R assessment indicated he

12

was at high risk for violating conditions of pretrial release. In view of these circumstances, we agree with the circuit court that no conditions or combination of conditions of release are reasonably likely to mitigate the threat to the safety of the community because defendant has demonstrated that he is unlikely to comply with such conditions. We find no error.

¶ 41                                  III. CONCLUSION

¶ 42    For the foregoing reasons, we affirm the orders of the circuit court granting the State's petition to deny pretrial release and denying the defendant's motion for relief.


¶ 43    Affirmed.