NOTICE

Decision filed 05/01/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260095-U

NO. 5-26-0095

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 26-CF-36 |
| | ) | |
| JOHN E. PAYNE JR., | ) | Honorable Evan L. Owens and |
| | ) | Honorable Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Vaughan and Clarke concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2     Defendant, John E. Payne Jr., appeals from the Jefferson County trial court's January 23, 2026, order granting the State's petition to deny pretrial release, as well as the court's January 29, 2026, order denying his motion for relief and immediate release. For the following reasons, we affirm.

¶ 3                                          I. BACKGROUND

¶ 4     On January 22, 2026, defendant was charged by information with one count of domestic battery, a Class 3 felony, which was enhanced due to prior domestic battery convictions. 720 ILCS 5/12-3.2(a)(2), (b) (West 2024). The State filed a verified petition to deny defendant pretrial release

1

the same day, alleging that defendant was charged with domestic battery, that he posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate that threat. 725 ILCS 5/110-6.1(a)(4) (West 2024).

¶ 5    The matter proceeded to a detention hearing on January 23, 2026. The State presented its evidence by proffer. Deputy Caroline Smith would testify that at approximately 3:24 p.m. she responded to a dispatch call involving a "physical domestic." When Smith arrived at the address, a woman identified as Lori Johnston came outside and was "frantic and yelling to come get him." Johnston was referring to defendant who "was refusing to leave the residence after he allegedly struck [Johnston] in the head with his fist."

¶ 6    Johnston told Smith that an hour prior to the 911 call, she and defendant had a verbal argument "about the defendant being with another woman and about [Johnston] being with another man." Defendant then struck Johnston in the forehead with a closed fist, causing her to fall backward into the closet door. Smith observed a noticeable lump on Johnston's forehead. In the residence, Smith saw a closet door "pushed in past its stopping point," as well as a hole in the closet door. Johnston told Smith that defendant took her cell phone after punching her so she could not call 911. Johnston used a hidden phone to text message Brittany Payne and advised Brittany to call 911 because Johnston could not call. The messages from Johnston were sent to Brittany at 3:15 p.m., and Smith observed them on Johnston's phone.

¶ 7    Smith then spoke to defendant, who stated that Johnston was "being vindictive" while he was packing up his belongings. Defendant stated that Johnston "told him she was going to call 911 and say that he hit her." Smith reported that defendant was looking at the ground and rubbing his face during his recollection of the event. Defendant stated that the lump on Johnston's head was not from him, but he did say that the parties were arguing because he was "packing [his] stuff up

2

to leave." Defendant also stated that the hole in the bedroom door had always been there, despite the hole being located on a different door. He said that Johnston "pushed into the closet door on her own right before the officers arrived." Defendant stated that the parties were arguing over "him being with another woman," and he continued to pack while listening to Johnston "run her mouth." Defendant was arrested.

¶ 8      Johnston additionally showed Smith a hole in the wall that she claimed was a bullet hole from defendant firing a gun during an argument approximately four months prior. Johnston did not know where the gun was, but stated defendant did have possession of one "for a little while." The State further proffered that Johnston had a history of banning defendant from the residence due to verbal arguments, and defendant had a history of "physical domestics." The trial court considered the pretrial investigative report with no objection.

¶ 9      Defense counsel then proffered that defendant was 51 years old and resided in Mt. Vernon, Illinois, with his sister. He did not reside at Johnston's home. He obtained a GED and had some college credits. He was a lifelong resident of Jefferson County with significant family ties. Defendant was employed by the Illinois Department of Rehabilitative Services (DORS), and he was working at Johnston's home. Defendant's property at Johnston's home was not "everyday property that one would have when they live at a place" but it was "just property that he had accumulated and left there." Defendant was not on probation, bond, pretrial release, parole, or work release at the time of his arrest. Defendant also did not have a record of failure to appear for court proceedings. Defense counsel stated that defendant was not in a relationship with Johnston, but instead was in an employer/employee role. Defendant did not live at the residence, and no weapon was used in the commission of the offense.

¶ 10 The State proceeded to argument, asserting that defendant committed the detainable offense of domestic battery, which was a felony charge due to his prior domestic battery convictions. The State argued that the proof was evident that defendant committed the offense in that Deputy Smith observed Johnston's injuries, her messages to Brittany, and the damage to the closet door, all of which were consistent with Johnston's statements. Defendant posed a risk to Johnston, as the offense was violent and left a knot on her forehead. Defendant had 28 prior charges: 15 felonies and 13 misdemeanors. Of those charges, five were domestic violence convictions and two were violations of an order of protection. Defendant had access to a weapon and previously used it to threaten Johnston in the home. Defendant was on court supervision for criminal trespass involving Johnston's address, and he was on conditional discharge in a different case. The State argued that the defendant was already on terms ordered by the court to follow the law and had not done so. The State asserted that GPS monitoring would not be adequate to ensure Johnston's safety, and no other combination of conditions would be sufficient.

¶ 11 Defense counsel argued that defendant denied the charges and that Johnston was "vindictive," threatening to make false allegations to get defendant into trouble. Defense counsel stated that the parties were not in a relationship, but that Johnston was jealous and was retaliating against him. Further, because no weapon was used in this offense, defendant was not a risk to any person or the community. Defendant asked to be released with electronic monitoring to his sister's residence.

¶ 12 The trial court stated that it considered the proffer and evidence from both parties, defendant's criminal history, and arguments from the parties. The trial court found that defendant posed a threat to Johnston, in part based on defendant's criminal history. Further, there was a prior history of violence toward Johnston, access to guns, and Deputy Smith's observations were

4

consistent with Johnston's statements. The trial court found that no conditions would ensure Johnston's safety. The trial court granted the State's petition to detain. The trial court entered a written order for detention on the same date, finding that, by clear and convincing evidence, the proof was evident or presumption great that defendant committed a qualifying offense; he posed a real and present threat to any person, persons, or the community; and no condition or combination of conditions could mitigate that threat. As to conditions, the trial court specifically found that less restrictive conditions would not be sufficient due to defendant's criminal history, failure to follow court orders, and long history with Johnston.

¶ 13    On the same day, defendant filed a motion for relief and immediate pretrial release. The motion alleged that the State failed to meet its burden of proving by clear and convincing evidence that the proof was evident or presumption great that defendant committed a detainable offense, posed a real and present threat to the safety of any person, persons, or the community, and that no condition or combination of conditions could mitigate the threat. Further, the trial court failed to fully consider defendant's ties to the community, his willingness to abide by any terms of pretrial release, his employment opportunities, and that no weapon was used in the commission of the alleged offense.

¶ 14    The trial court held a hearing on the motion on January 29, 2026. Due to the hearing being before a different judge than the judge at the initial detention hearing, defense counsel provided the same factual proffer that defendant was 51 years old with a GED and some college credits, and a resident of Jefferson County with significant ties to the area. He was on conditional discharge and supervision at the time of his arrest, but not probation, bond, pretrial release, parole, or work release. He did not have a record of failure to appear or any addictions. Defendant was employed by DORS and was employed as Johnston's caretaker. He denied any relationship with Johnston

5

outside of that role and denied that she was a household member. Defendant stated that Johnston "was just jealous of him" and made everything up to cause him trouble. Additionally, there was no weapon used in the offense. The State then proceeded by proffer, restating the information provided at the initial detention hearing.

¶ 15    Defense counsel argued that during the initial hearing, the trial court failed to fully consider defendant's ties to the community, his willingness to abide by any terms of pretrial release, his employment opportunities, and that no weapon was used. Further, there were no medical records to "reinforce" the knot on Johnston's head, as she refused medical attention. Defense counsel asked for defendant's release with electronic monitoring to live with his sister.

¶ 16    The State argued that the legislature specifically included domestic battery as a detainable offense, in doing so recognizing vulnerable victims. The State asserted that defendant's release posed a real and present threat to Johnston. Defendant's history included convictions for 15 felonies and 13 misdemeanors, 5 of which were for domestic battery and 2 were for violations of orders of protection. Defendant also took Johnston's phone and attempted to prevent her from calling 911. There would be no less restrictive conditions to guarantee her safety. Further, defendant was already on conditional discharge and court supervision, with the supervision case arising out of a trespass case related to Johnston's address. Johnston required a caretaker from DORS due to her cancer, which made her vulnerable. Defendant was already on two forms of supervision at the time of the offense, which showed that he would not cooperate with conditions such as electronic monitoring. The State argued that no conditions would guarantee Johnston's safety.

¶ 17    The trial court stated it considered several factors in defendant's favor, including his age, GED and college credits, ties to the community, employment, and housing. The trial court said

6

that the offense was detainable, and the evidence presented was "disturbing." The trial court further considered defendant's "extensive criminal history, which [was] terrible." Specifically, battery, domestic battery, violations of orders of protection, and drug convictions over the course of many years. Defendant was already placed on court supervision for trespass involving Johnston's address, as well as conditional discharge, both of which would involve court orders that defendant not violate the law. Johnston was also physically vulnerable, as she required state assistance for her health. The trial court then denied defendant's motion for relief. Defendant appealed.

¶ 18                                II. ANALYSIS

¶ 19     Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a

7

real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 20　The court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. These include the following:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024).

No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 21    Once a court determines that the defendant poses a threat to the safety of any individual or the community, the trial court must determine whether the State has met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person;[1] (4) the nature and seriousness of the specific,

---

[1]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2024).

9

real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The Code of Criminal Procedure of 1963 lists no singular factor as dispositive. See *id.* The nature and circumstances of the underlying offense is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

¶ 22 Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. As no live testimony was presented at the detention hearing, we will employ a *de novo* standard.

¶ 23 On appeal, defendant filed a notice in lieu of memorandum. As such, his motion for relief serves as his argument on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Defendant's motion for relief states the following:

"7. The Court erred in granting the State's Petition to Deny Pre-Trial Release at said hearing, in that the State failed to meet its burden of proving by clear and convincing evidence any of the above in that:

a. The Court failed to fully consider Defendant's ties to the community.

b. The Court failed to fully consider Defendant's willingness to abide by any terms of pre-trial release.

10

c. No weapon was alleged to have been used in the commission of the alleged offense.

d. The Court failed to fully consider Defendant's employment opportunities."

As defendant did not file a memorandum on appeal, this represents his arguments before this court. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). This argument, however, does not specify how each factor applies to each element of detention. "Whether made in the motion for relief alone or as supplemented by the memorandum, the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." *Id.* A party may not simply "dump the burden of argument and research" on the reviewing court; rather, a reviewing court is "entitled to have the issues clearly defined and to be cited pertinent authority." (Emphasis omitted.) *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56.

¶ 24　"[D]efendants must endeavor to present a more complete analysis of the issues in their motions for relief or, as the rule allows, file a supplemental memorandum in support of the appeal rather than relying on the appellate court to do the work for them." *People v. Post*, 2025 IL App (4th) 250598, ¶ 23. Failure to comply with Rule 604(h)(7) by presenting arguments with "sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities," constitutes waiver of the issue on appeal. Ill. S. Ct. R. 604(h)(7), (2) (eff. Apr. 15, 2024).

¶ 25　In the present case, defendant's motion for relief asserts that the trial court erred in granting the State's petition to deny due to the State's failure to meet its burden of proof for "any of the above," which includes the elements of the statute: that the proof is evident or presumption great

that the defendant committed a qualifying offense, that he poses a real and present threat to the safety of any person or the community, and that no condition or combination of conditions can mitigate that threat. Rather than clearly arguing how the State failed to prove each element of the statute, defendant's counsel instead provided a list of factors the trial court "failed to fully consider" as to all the elements of the statute. This does not provide the court with sufficient detail to enable meaningful appellate review, and the issues were not advanced by a memorandum on appeal. As such, we will have to interpret the motion for relief arguments now before this court on appeal.

¶ 26    As to whether the proof is evident or presumption great that defendant committed a detainable offense, the factors included in the motion for relief do not apply. This argument is not presented anywhere else within the motion. Any issues not raised in the motion for relief are deemed waived. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). As such, we find this issue waived.

¶ 27    As to whether defendant posed a real and present threat, only one factor would be applicable, being that no weapon was alleged to have been used in the offense, as this is enumerated in the statute. See 725 ILCS 5/110-6.1(g)(1) (West 2024) (the court may consider the nature and circumstances of the offense charged, including whether it involved a weapon). We will thus evaluate if defendant posed a real and present threat.

¶ 28    We have conducted our own independent review of the proffered evidence and the relevant factors. First, the nature and circumstances of the offense charged against defendant involved a crime of violence. *Id.* Next, the history and characteristics of the defendant include five domestic battery convictions, two violations of order of protection, with 15 felonies and 13 misdemeanors in total. *Id.* § 110-6.1(g)(2). Defendant poses a threat to Johnston specifically, due to their history and prior instances of violence. *Id.* § 110-6.1(g)(3). Further, Johnston was in a vulnerable physical

condition, as she was receiving treatment for cancer, which necessitated caretaking from DORS. *Id.* § 110-6.1(g)(6). While no weapon was used in the present offense, Johnston also informed Deputy Smith that defendant previously threatened her with a firearm, which resulted in a bullet hole in the home, thus defendant had access to weapons. *Id.* § 110-6.1(g)(7). Defendant was not on probation, parole, or mandatory supervised release at the time of the offense. *Id.* § 110-6.1(g)(8). He was, however, on court supervision for a trespassing case involving Johnston's residence and conditional discharge in a different case. *Id.* § 110-6.1(g)(9). Given all these factors, the State proved by clear and convincing evidence that defendant posed a real and present threat to the safety of Johnston or the community.

¶ 29    Defendant's motion for relief argued that the trial court failed to fully consider his ties to the community, willingness to abide by any terms of pretrial release, and his employment opportunities. These factors are applicable to whether the State has met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). We will thus review whether any conditions would mitigate defendant's real and present threat.

¶ 30    We find the following factors support the conclusion that no condition or combination of conditions could mitigate the real and present threat posed by defendant. First, the nature and circumstances of the offenses charged. The offense of domestic battery involved violence and was enhanced to a felony due to defendant's criminal history. *Id.* § 110-5(a)(1). Next, the weight of the evidence against defendant included a proffer of the police report, which detailed the offense and Deputy Smith's observations of consistent injuries and evidence as described by Johnston. *Id.*

13

§ 110-5(a)(2). Further, defendant's criminal history was extensive, with 28 total convictions, including 15 felonies and 13 misdemeanors. *Id.* § 110-5(a)(3). Defendant's convictions also included five prior domestic batteries and two prior violations of order of protection. Additionally, defendant presents a serious threat to Johnston if released as he caused injury to her head while being aware of her physical vulnerabilities, and the parties had a history of violence. *Id.* § 110-5(a)(4). Accordingly, based on our independent review, we agree with the trial court that no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 31                                III. CONCLUSION

¶ 32     Based on the foregoing reasons, we affirm the trial court's orders of January 23, 2026, and January 29, 2026.

¶ 33     Affirmed.