NOTICE
Decision filed 12/02/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250720-U

NO. 5-25-0720

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 25-CF-190 |
| | ) | |
| ERIC D. NABORS, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1 *Held*: The circuit court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2 The defendant, Eric D. Nabors, appeals from the September 3, 2025, order of the circuit court of Jefferson County denying his motion for relief and immediate release and the August 26, 2025, order granting the State's petition to deny him pretrial release.

¶ 3 I. BACKGROUND

¶ 4 On August 25, 2025, the defendant was charged by information with one count of aggravated discharge of a firearm, a Class 1 felony, and one count of unlawful possession of a weapon by a felon, a Class 3 felony. 720 ILCS 5/24-1.2(a)(2) (West 2024); *Id.* § 24-1.1(a). The same day, the State filed a verified petition to deny the defendant pretrial release, stating he was

1

charged with a qualifying offense and that his pretrial release would pose a real and present threat to the safety of any person or persons of the community.

¶ 5    The matter proceeded to a hearing on August 26, 2025. At the hearing, the State first recited the defendant's criminal history. The defendant had four prior convictions for driving on a suspended license, two prior Class 2 felony convictions for delivery of a controlled substance in Jefferson County, and a federal conviction for distribution of crack-cocaine. The State proffered that Officer James of the Mt. Vernon Police Department would testify that on August 21, 2025, at 10:35 p.m., she responded to the 700 block of Conger for gunshots in the area. Upon arrival, she saw a large crowd at the scene. The crowd indicated they heard gunshots, but there was no indication that anyone saw an offender. Officer James located six shell casings on the roadway at the 800 block of Conger. The shell casings were collected into evidence and photographed. Police obtained video surveillance footage of the 800 block of Conger showing several people gathering at 7:35 p.m. A black male in dark clothing exited the residence of 806 Conger at 10:36 p.m. while a red Chrysler Pacifica arrived at the same time. A black male with long dreadlocks, wearing a blue t-shirt with red shorts that had black and white cuffs at the bottom, exited the front passenger seat of the red Chrysler Pacifica. The two black males fired six or seven gunshots total toward the crowd. The video depicts multiple muzzle flashes from both individuals, then shows them running west down Conger.

¶ 6    Earlier that same day, at 12:47 p.m., Detective Osborn had contact with the defendant at 1118 S. 13th Street in Mt. Vernon, Illinois, from an unrelated investigation. Nabors had dreadlocks and wore a blue shirt and red shorts with black and white cuffs at the bottom, and a body camera captured the interaction.

¶ 7     On August 22, 2025, one day after the shooting, police located the red Chrysler Pacifica behind the residence where police had made contact with the defendant on the day of the shooting. A search warrant was executed on the residence the same day. The defendant and Korinthian Davis were taken into custody and interviewed at the police station. During the interview, the police informed the defendant that they had located a 9-millimeter pistol under the mattress in his room. The defendant admitted to possessing the firearm and placing it under the mattress that day but did not know whether the firearm was stolen. The defendant described the shooting but stated that he was unaware of any conflict and did not know the identities of anyone present during the shooting. The defendant told police that Davis had contacted him on the day of the shooting and told him that he had "some things going on and was scared." The defendant admitted to being at the scene of the shooting and stated that he and Davis entered the same vehicle after the shooting. The defendant stated he did not know how many shots Davis fired and did not see Davis with a firearm when they returned to the residence.

¶ 8     Davis told the police that the defendant was his cousin and that he was at the defendant's house when he saw approximately 10 individuals outside the residence knocking on the door. Davis did not have any animosity towards any of the individuals, and he did not know what started the incident. Davis admitted to exiting the residence and discharging the firearm to protect himself. He described the firearm and told the police they could recover the gun in a bag on the side of the television in his room. The firearm was subsequently recovered.

¶ 9     Officers also interviewed Darin Williams, who was present at the residence when the search warrant was executed. Williams was the owner of the red Chrysler Pacifica. Williams stated that he drove the defendant to pick up Davis, who was having issues with a group of individuals. The defendant was on the phone with Davis as they were driving to the residence, and when they

3

arrived, the defendant exited the vehicle as Davis came out of the residence. Shortly thereafter, gunfire erupted. Williams panicked and squatted near his vehicle. He then drove to pick up the defendant and Davis, who had fled the scene on foot. Williams stated that the defendant and Davis were shooting, but that no one in the group of individuals ever shot back. Lastly, he stated that Davis discarded the firearm in the weeds near the residence and that the defendant's firearm might still be in the defendant's room.

¶ 10    The 9-millimeter handgun recovered from the defendant's bedroom was fully loaded with hollow point ammunition. Live rounds of ammunition were also found in Davis's room, along with the gun described by Davis. No one had reported being struck by the gunfire.

¶ 11    The State argued that the defendant should be denied pretrial release, as he had previously been sentenced to prison and had been convicted of numerous felonies and traffic offenses in both state and federal court. He was prohibited from possessing a firearm and yet was discharging one in the direction of others. The likelihood of success at trial was incredibly high given the proffered evidence. The defendant was facing a serious prison term and a mandatory prison sentence if convicted on the unlawful possession of a weapon count. The State argued that pretrial detention was necessary to protect the community and those "as-of-yet unidentified individuals" targeted by the defendant and Davis. Further, the defendant should not be released where he could shoot at someone else or where he could be shot by someone. The State argued that there were no conditions available to prevent the defendant from further violating the law. His status as a convicted felon was akin to a court order not to possess a firearm, and it had not deterred him from acquiring a firearm. He would not adhere to orders that he remain on house arrest or not acquire any more weapons. Additionally, the defendant was currently under bail conditions for a pending case at the time of his arrest in this case.

¶ 12    Defense counsel proffered that the defendant was 40 years old and resided with his wife and four children in Mt. Vernon, Illinois. He was a high school graduate, employed for three years, lived in Jefferson County for 18 years, and had strong family ties to the community. He had only one failure to appear in court, and that was because he had forgotten the case was still pending against him. He argued that he would submit to any conditions of release, such as electronic monitoring and home confinement.

¶ 13    The circuit court found that the defendant committed a detainable offense, and he posed a real and present threat to the community. The court noted that the defendant was a high school graduate, had ties to the community, and that he was employed. However, this was a very serious offense involving gunfire in the direction of other people. There was a strong likelihood of conviction, and if he were convicted, he would be facing mandatory jail time. If someone knows they are likely going to prison, that raises a threat of flight. The court found his criminal history was serious. The court did not know whether the guns were stolen. The defendant was a convicted felon and he could not possess guns. The proffer did not inform the court as to why the shooting occurred and there may still be a problem that existed, which concerned the court as to danger to the public or to a particular individual. The defendant was out on bail conditions for a 2014 felony charge. One of the conditions of bail was that he not violate the law. There was also an implicit court order that he not possess a firearm if he were a convicted felon. The court did not believe there was any combination of conditions that would assure the defendant abide by pretrial conditions, and GPS or home confinement was not sufficient. The court then ordered him detained.

¶ 14    The defendant filed a motion for relief on August 27, 2025. The motion stated that the circuit court erred in granting the State's petition to deny pretrial release where the State failed to prove any of the three factors under the dangerousness standard. Specifically, he argued that (1) the

5

court failed to consider the defendant's ties to the community, (2) the court failed to fully consider the defendant's willingness to abide by any terms of pretrial release, (3) no person was physically injured during the alleged offense, (4) the court failed to fully consider the defendant's employment opportunities, and (5) the court failed to fully consider that the defendant had lived a law abiding life for quite some time.

¶ 15    On September 3, 2025, the circuit court held a hearing on the defendant's motion for relief and the defendant's preliminary hearing on the same date. At the outset, the following exchange occurred between the circuit court and the parties:

> "THE COURT: This matter comes on today for a hearing on the defense Motion For Relief from the Court's previous order denying pretrial release and also for preliminary hearing, and I believe there's an agreement that these be handled concurrently. Is that right, [Defense Counsel]?
>
> [DEFENSE COUNSEL]: Yes, your honor.
>
> THE COURT: And [Assistant State's Attorney]?
>
> [ASSISTANT STATE'S ATTORNEY]: Yes, Judge.
>
> [DEFENSE COUNSEL]: Your Honor, I will state I believe that's provided by statute.
>
> THE COURT: I think you're right, actually. So I will show, then, a hearing on defendant's Motion for Relief and preliminary hearing. And the Court is aware that the Motion for Relief, which is filed by the defense, but I believe it is still the State's burden of proof to show that the defendant should be released by clear and convincing evidence.
>
> The counsel [*sic*] are both allowed to present their evidence by proffer if they desire, and that the evidence is to be considered in its most liberal light in favor of the defendant. And I believe that the State, then—I believe counsel have agreed the State will go first here in carrying forward its preliminary hearing. So are you ready, [Assistant State's Attorney]?
>
> [ASSISTANT STATE'S ATTORNEY]: Yes, Judge.
>
> THE COURT: Is that all right with you, [Defense Counsel]?
>
> [DEFENSE COUNSEL]: It is, your Honor."

The State called Detective Osborn for the preliminary hearing. Osborn testified consistently with the State's proffer at the initial detention hearing. Osborn added that, during the execution of the search warrant at the defendant's residence, they located the blue t-shirt, red shorts, and a pair of Air Jordans like the ones the shooter was seen wearing in the video. After hearing the evidence presented, the circuit court found probable cause for both charges.

¶ 16    In addressing the defendant's motion for relief, defense counsel reiterated the arguments raised at the initial detention hearing while contending that the court failed to fully consider the defendant's ties to the community, his willingness to abide by any terms of pretrial release, and his employment opportunities. The State opposed the motion and asked the circuit court to consider Osborn's testimony, the charges, and the defendant's criminal history. It argued consistently with its arguments at the initial detention hearing.

¶ 17    The circuit court acknowledged several favorable factors for the defendant, including his education, employment, family ties, and minimal prior failures to appear, but found these were outweighed by the seriousness of the charges and the strength of the State's case. The court emphasized that the offenses involved a convicted felon possessing and discharging a firearm toward people, conduct it deemed highly dangerous and indicative of disregard for human life. It further noted the defendant's criminal history and his refusal to disclose the firearm's source as additional concerns. Concluding that no conditions of release could adequately mitigate the risk to public safety or prevent similar conduct, the court denied pretrial release. The defendant timely appealed.

¶ 18                                    II. ANALYSIS

¶ 19    The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant. OSAD filed a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff.

7

Apr. 15, 2024) on behalf of the defendant. On appeal, the defendant raises two arguments: (1) the circuit court erred when it failed to comply with the requirement that a probable cause hearing be held as part of the detention hearing in accordance with the Pretrial Fairness Act (Act) and (2) the State failed to prove by clear and convincing evidence that no conditions could mitigate the risk of danger posed by the defendant.

¶ 20    Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* §§ 110-6.1(e), (f). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 21    Our standard of review of pretrial release determinations is twofold. Where the trial court is asked to consider the testimony of live witnesses, and make factual findings, such as the State's

8

burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, the defendant has a high likelihood of willful flight to avoid prosecution, or the defendant failed to comply with previously ordered conditions of pretrial release, our standard of review is the manifest weight of the evidence. *People v. Morgan*, 2025 IL 130626, ¶ 54. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). Alternatively, where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *Morgan*, 2025 IL 130626, ¶ 54. In the present matter, live testimony was presented during the probable cause hearing held concurrently with the motion for relief hearing, so we will employ the manifest weight of the evidence standard of review.

¶ 22     A defendant may be denied pretrial release only in certain limited situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2024). After filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that (1) the defendant has committed a qualifying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* §§ 110-6.1(e), (f).

¶ 23     Once a court determines that the defendant poses a threat to the safety of any individual or the community, the trial court must determine whether the State has met its burden by clear and

9

convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person;[1] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.* The nature and circumstances of the underlying offense is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

¶ 24    The defendant first argues that the circuit court erred when it did not hold a probable cause hearing as part of the detention hearing. The defendant cites section 110-6.1(b) of the Act in support of his contention, which states in relevant part, "as part of the detention hearing, the court shall determine whether there is probable cause the defendant has committed an offense." 725 ILCS 5/110-6.1(b) (West 2024). He asserts that this claim is preserved for review where defense counsel "raised it at the hearing on his motion for relief" by informing the circuit court that a probable cause hearing was required by statute and "the circuit court and the parties addressed it head on." In the alternative, he requests that this issue be reviewed under the second-prong plain

---

[1]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2024).

error. The State argues the defendant has waived the issue by failing to include the argument in his written motion for relief. Additionally, the State argues the defendant mischaracterizes the exchange between defense counsel and the circuit court, where it is clear defense counsel was not raising the issue as an argument in support of its motion for relief but instead "acquiescence" to the circuit court's inquiry regarding conducting a preliminary hearing simultaneously with the hearing on the motion for relief. We agree with the State.

¶ 25    Rule 604(h)(2) states, "Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). The language in 604(h)(2) is clear that we are to consider waived any arguments not advanced in the motion for relief. *People v. Nettles*, 2024 IL App (4th) 240962, ¶ 33. Issues not raised in the motion for relief are waived and thereby unreviewable under the doctrine of plain error. *People v. Jackson*, 2025 IL App (4th) 231311-U, ¶ 19;[2] *Nettles*, 2024 IL App (4th) 240962, ¶¶ 33-34. Allowing parties to raise an issue for the first time on appeal would "allow a party to circumvent the rules and ignore the importance of first placing the argument before the trial court." *People v. Drew*, 2024 IL App (5th) 240697, ¶ 44.

¶ 26    Here, the defendant did not include in his motion for relief the argument that the circuit court erred by failing to hold a preliminary hearing as part of the initial detention hearing, and the discussion between defense counsel and the circuit court cannot be interpreted as the defendant arguing this issue before the circuit court as grounds for relief. Instead, the discussion serves as an agreement between the parties and the circuit court to hold a preliminary hearing simultaneously with the hearing on the motion for relief. Because the defendant did not raise this argument at the

---

[2]Nonprecedential Rule 23 orders issued on or after January 1, 2021, may be cited for persuasive purposes. Ill. S. Ct. R. 23(e)(1) (eff. Jan. 1, 2021).

initial hearing or the motion for relief hearing, we find that the argument is waived and thereby unreviewable under the doctrine of plain error.

¶ 27 Next, the defendant claims that the State failed to establish, and the circuit court erred in finding that no set of conditions would mitigate the defendant's threat to the community if he were released. Specifically, he argues that such a finding was in error where he (1) was fully employed, (2) had lived as a law-abiding citizen for quite some time and had been on bail for a 10-year-old case, and (3) supported his family and had two residences available where he could be placed on home confinement and electronic monitoring.

¶ 28 Here, the circuit court found that no condition or combination of conditions, including home confinement and electronic monitoring, could reasonably mitigate the danger the defendant posed. The circuit court explicitly considered the defendant's arguments and his ties to the community but found that those facts were outweighed by the seriousness of the offense and the strength of the State's case. Further, the circuit court determined that the defendant was not likely to comply with an order of release where the offense involved the discharge of a firearm for unknown reasons, the defendant admitted to acquiring and possessing a firearm despite his status as a felon, and that further acts of violence or retaliation against the defendant himself or the group of individuals were possible. Based on the above facts, an opposite conclusion is not clearly evident or the finding itself is not unreasonable, arbitrary, or not based on the evidence presented. Therefore, we find that the trial court's decision to detain the defendant was not against the manifest weight of the evidence. *Morgan*, 2025 IL 130626, ¶¶ 38, 43.

¶ 29                                III. CONCLUSION

¶ 30 Based on the foregoing reasons, we affirm the circuit court's orders of August 26, 2025, and September 3, 2025.

12

¶ 31    Affirmed.