2026 IL App (2d) 260119-U
No. 2-26-0119
Order filed June 22, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

AUSTIN SMITH, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable Bianca Camargo, Judge, Presiding.
No. 26-CF-372

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court erred in ordering defendant's pretrial detention where the State did not prove that the proof was evident or the presumption great that he committed a detainable offense.

¶ 2    Defendant, Austin Smith, appeals the denial of his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 (West 2024)). He argues the State failed to prove that (1) the proof was evident or the presumption great that he committed a detainable offense, (2) he posed a real and present threat to the safety of any person or the community, and (3) no condition or combination of conditions of pretrial release could mitigate the threat he posed.  He therefore asserts that the trial court erred in denying him pretrial release. We reverse and remand with directions.

¶ 3                          I. BACKGROUND

¶ 4    On February 18, 2026, defendant was charged with eight counts of possession of child sexual abuse material (CSAM) (720 ILCS 5/11-20.1(a)(6) (West 2024)) (Class 2 felony). The counts alleged that defendant possessed images of young children naked at a beach, by a pool or a splash pad, or in a bathtub. On that same day, the State filed a verified petition to deny defendant pretrial release (725 ILCS 5/110-6.1 (West 2024)), and the trial court held a hearing on the petition. The State presented as evidence the St. Charles police department synopsis. That synopsis indicated that, on November 16, 2025, police began investigating defendant's alleged possession of CSAM. The police learned that defendant had been involved in a Discord group discussion, had stated that he had CSAM, and had made suicidal statements. Some of the other members of the Discord group discussion video recorded some of defendant's statements. In those statements, defendant stated that he had pictures on his phone of naked children between the ages of three and eight and that he viewed those pictures for his sexual gratification. Police subsequently viewed photos on both defendant's phone and iPad. The synopsis indicated those photos included several images of CSAM. Police also looked at defendant's internet search history. Defendant's search history included searching for "nude little boys," "teens urinating," and "pedophiles."

¶ 5    One of defendant's acquaintances indicated that defendant had submitted a background check while seeking employment. For that background check, defendant had provided his iCloud username and log in information. The background check reportedly located hundreds of images of CSAM.

¶ 6    The synopsis further indicated that defendant lived on his own part time in an apartment in Elgin. The police contacted defendant's mother, Cynthia, regarding the images of the children on defendant's phone. She asked "if it was in regard to the kids peeing." Police also discovered

messages between defendant and Cynthia. In those messages, Cynthia talked about defendant's "CSAM, being a 'pedo,' and going to prison."

¶ 7 The State argued that the above facts demonstrated that the proof was evident and the presumption great that defendant had committed the charged offenses. The State further argued that defendant posed a real and present threat of dangerousness because of his mental instability and his suicidal statements. Additionally, the State maintained that no conditions could mitigate this dangerousness because defendant was accessing CSAM on multiple devices in multiple locations and that trying to monitor him and keeping him from accessing the internet would be nearly impossible.

¶ 8 In response, defendant argued that the charging documents did not provide any evidence that the images retrieved from his electronic devices rose to the level of CSAM. Defendant argued that neither the State's charges nor the police synopsis described any pictures that were of a sexual nature. Defendant further argued that his lack of criminal history in addition to his low score of "1" in terms of likelihood of new criminal activity or failure to appear at future court hearings demonstrated his lack of dangerousness to the community. He also argued that there were no allegations that he had "sophisticated knowledge" as to the possession of his CSAM or that he had attempted to disseminate any videos or photographs depicting CSAM. He noted that he had been diagnosed with profound mental health issues, including autism spectrum, obsessive compulsive disorder (OCD), ADHD, generalized anxiety disorder and persistent depressant disorder. He asserted that he was sexually abused at age five. Since about that time, he had been receiving psychological and psychiatric services, and he had been on numerous medications.

¶ 9 Defendant additionally pointed out that he was 30 years old. In 2015, his mother had petitioned to be his legal guardian. He had been unemployed for the last 18 months and lived

semi-independently in an apartment in Elgin. Following the incident at issue, he returned to living with his mother.

¶ 10 In terms of conditions that could be imposed to mitigate any perceived threat, defendant argued that he should be ordered to continue receiving the treatment he had for the past decades and that he be ordered not to use the internet.

¶ 11 At the close of the hearing, the trial court granted the State's petition for pretrial detention. The trial court found that the police had found via search warrants over 200 images of CSAM that corroborated defendant's statements that he had such material. As to defendant's dangerousness, the trial court noted the quantity of CSAM images that were found in defendant's possession, his acknowledgment that he possessed such images, and his threats of self-harm. In terms of imposing any conditions, the trial court expressed its concern that defendant would not adhere to any conditions it imposed. The trial court further stated its concern that defendant's mother was apparently somewhat aware of what he was doing.

¶ 12 On March 5, 2026, defendant filed a motion for relief. He argued that the State's proffer of the police synopsis was insufficient as the proof was neither evident nor the presumption great that he committed the charged detainable offenses. Defendant argued that the police synopsis insufficiently described the images at issue for the trial court to determine by clear and convincing evidence that the images were CSAM. Defendant asserted that the State did not proffer whether (1) the focal point of any of the images was a minor's genitals, (2) the visual depictions were sexually suggestive, (3) the minors were in unnatural poses or inappropriate attire, (4) the images depicted sexual coyness or a willingness to engage in sexual activity, and (5) the minors were posed in such a way to elicit a sexual response.

¶ 13 Defendant argued that he did not pose a real and present threat to the safety of any person. He noted that he is (1) 30 years old and under the legal guardianship of his mother; (2) autistic and has additional diagnoses of OCD, ADHD, anxiety and depression; and (3) has no history of violence nor any prior arrests. Further, pretrial services assessed him with the lowest scores of 1 in the categories of failure to appear and future criminal history.

¶ 14 Defendant additionally argued that the State failed to show by clear and convincing evidence that "no condition or combination of conditions" could mitigate his perceived threat. He argued that the charges in the case stemmed from his internet use and that conditions could be imposed that would mitigate any possible risk.

¶ 15 On March 13, 2026, following a hearing, the trial court denied defendant's motion for relief. The trial court found that the State had met its burden in establishing that defendant had committed the charged offenses. The trial court found that the State had introduced evidence that defendant possessed hundreds of CSAM images on multiple devices. The trial court noted that defendant had made statements acknowledging that he possessed CSAM. The trial court further found that defendant's internet search history of "nude little boys," "teens urinating," and "pedophiles" supported the charges. The trial court concluded that the State had established defendant's dangerousness based on the factors it had set forth at the initial detention hearing. Finally, the trial court determined that no conditions of release could mitigate defendant's dangerousness. The trial court noted defendant's close relationship with his mother, her apparent knowledge of what he had been doing, and her warnings of what would happen if the police were to investigate. The trial court noted that the case was not against defendant's mother and that it had no control over her. The trial court indicated its concern that if it imposed certain conditions,

such as defendant being prohibited from having any device that would allow him to access the internet, it would have no ability to ensure compliance with those conditions.

¶ 16    Defendant thereafter filed a timely notice of appeal.

¶ 17                                II. ANALYSIS

¶ 18    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (725 ILCS 5/110-6.1(e)(1) (West 2024)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. Where both parties proceed solely by proffer, such as here, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 22; *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 18.

¶ 19    Defendant did not file a memorandum, so his motion for relief serves as his argument on appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024).

¶ 20    Defendant first argues that the State's proffer of the police synopsis was insufficient as the proof was neither evident nor the presumption great that he committed the charged detainable offenses. Defendant contends that the State failed to present sufficient evidence that the images at issue rose to the level of CSAM. See 720 ILCS 5/11-20.1(a)(1) (West 2024) (setting forth the definitions of CSAM). Defendant argues that the only definition of CSAM that is potentially

applicable is section 11-20.1(a)(1)(vii), which provides that CSAM are those images that are "depicting or portraying in any pose, posture or setting involving a lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast of the child or other person." *Id.* Defendant asserts that as none of the pictures described in the police synopsis or the State's complaint rose to the level of being a lewd exhibition, the State failed to carry its burden that he should be detained.

¶ 21 Pictures of nude children are not CSAM unless the depictions of those children are lewd. *People v. Lamborn*, 185 Ill. 2d 585, 591 (1999). "Lewd" is defined as " '[o]bscene, lustful, indecent, lascivious, lecherous.' " *People v. Walcher,* 162 Ill. App. 3d 455, 460 (1987) (quoting Black's Law Dictionary 817 (5th ed. 1981)). In assessing whether a visual depiction of a child constitutes the lascivious or lewd exhibition of the genitals, courts consider whether: (1) the focal point of the visual depiction is on the child's genitals; (2) the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; (3) the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) the child is fully or partially clothed, or nude; (5) the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) the visual depiction is intended or designed to elicit a sexual response in the viewer. *Lamborn*, 185 Ill. 2d at 592. The visual depiction need not involve all these factors to be considered lewd. *Id.* Rather, the determination of whether the visual depiction is lewd will involve an analysis of the overall content of the depiction, considering the age of the minor. *Id.* at 593. This determination must therefore be made on a case-by-case basis. *Id.*

¶ 22 Here, the pictures that are described in the criminal complaint as well as the police synopsis do not rise to the level of lewdness. Other than the allegations that the children are naked in the

pictures, none of the other factors for determining lewdness set forth in *Lamborn* are present. Nakedness alone is not enough to establish lewdness. *Id.* at 594 ("[P]ictures of nude children do not necessarily become [CSAM] when they reach the hands of a pedophile").

¶ 23     We note that the State argues that the synopsis provided an "abundance of evidence" that defendant committed a detainable offense, including defendant's admission that he possessed CSAM, his text messages with his mother that he possessed CSAM, and the multitude of images of CSAM recovered from his devices.   However, there is no indication in the record that defendant's and his mother's understanding of CSAM aligned with the statutory definition of that term.   Further, referring to something as being CSAM does not in and of itself make it CSAM. *Id.* at 591-92.

¶ 24     Accordingly, we determine that the State did not meet its burden that the proof was evident or the presumption great that defendant had committed a detainable offense.   We therefore reverse the trial court's decision denying defendant pretrial release and remand for the trial court to impose conditions for defendant's pretrial release.

¶ 25                                III. CONCLUSION

¶ 26     For the reasons stated, we reverse the judgment of the circuit court of Kane County and remand for the trial court to set conditions for defendant's pretrial release.

¶ 27     Reversed and remanded with directions.